IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| J. ALLEN STEELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:06-CV-258 |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| and BROADSPIRE SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Defendant Broadspire Services, Inc. ("Broadspire") has filed a motion for judgment on the pleadings [doc. 16]. Although this civil action pertains to a typical benefit plan ("the Plan") governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the circumstances underlying the present motion are far from typical. Nonetheless, because plaintiff's state law claims against Broadspire are preempted by ERISA, the motion will be granted and defendant Broadspire will be dismissed from this litigation.

I.

*Standard of Review*

Motions for judgment on the pleadings are authorized by Rule 12(c) of the Federal Rules of Civil Procedure. Courts analyze Rule 12(c) motions employing the same standard applied to Rule 12(b)(6) motions to dismiss. *See Penny/Ohlmann/Nieman, Inc. v.*

*Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) ("*PONI*") (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). The court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Hog Market*, 249 F.3d at 512. The court need not, however, accept legal conclusions presented in the complaint, nor should it make unwarranted factual inferences. *See PONI*, 399 F.3d at 697 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

If "matters outside the pleadings are presented to and not excluded by the court," a Rule 12(c) motion is generally then converted to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(c). The burden is then placed upon the movant to demonstrate that there is no genuine issue of disputed material fact. *See* Fed. R. Civ. P. 56(c).

There are exceptions to this general rule. Documents attached to a 12(c) motion are considered part of the pleadings if they are: (1) central to the plaintiff's claims; and (2) referred to in the plaintiff's complaint. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Broadspire has attached the Plan to its memorandum of law, and the Plan has been considered by the court. Because the Plan and its terms are central to plaintiff's claims and because they are referenced in his complaint, Broadspire's submission of the Plan does not convert the present motion into one for summary judgment.

II.

*The Plan*

Maintained by defendant United Parcel Service, Inc. ("UPS"), the Plan provides, *inter alia*, short-term ("STD") and long-term ("LTD") disability benefits for employees who meet the requirements for eligibility. UPS is named as the Plan administrator, with "the exclusive right and discretion to interpret the terms and conditions of the Plan, and to decide all matters arising in its administration and operation, including questions of fact and issues pertaining to eligibility for, and the amount of, benefits to be paid by the Plan." [Doc. 17, ex. 1, p. 109].

UPS is authorized to delegate its administrative duties "to one or more outside administrative service providers." [Doc. 17, ex. 1, p. 109]. Administration of STD and LTD "processing of claims and the payment of benefits" is delegated to "Broadspire National Services" [Doc. 17, ex. 1, p. 109-10], which no party argues to be a different entity than defendant "Broadspire Services, Inc." In its role as designated STD and LTD claims administrator, Broadspire serves in a fiduciary capacity. *See* 29 U.S.C. § 1002(21)(A); 29 C.F.R. § 2509.75-8.

Under the Plan, a participant is considered disabled for STD purposes "if the claims administrator, Broadspire, determines that you are unable to perform the material and substantial duties of your regular occupation because of an illness or injury." [Doc. 17, ex. 1, p. 91]. The Plan requires Broadspire to apply virtually the same standard to LTD

applicants during the first phase (24 months) of LTD eligibility. [Doc. 17, ex. 1, p. 97]. Lastly, the Plan provides that "[i]f you are absent from your regular occupation for 12 months, you will be administratively separated from employment, regardless of your status on STD or LTD." [Doc. 17, ex. 1, p. 96].

III.

*The Complaint*

The court accepts for purposes of the present motion that all of the complaint's factual allegations are true. *See Hog Market*, 249 F.3d at 512. The court will not, however, credit bare legal conclusions offered in the complaint, nor will it make unwarranted factual inferences. *See PONI*, 399 F.3d at 697.

Plaintiff was employed by defendant UPS from 1984 through 2005. [Complaint, ¶ 7]. He last worked for UPS as an airport ramp supervisor. [Complaint, ¶ 8].

Plaintiff was held out of work for three weeks in November 2004 by his doctor due to chest pains, hypertension, diabetes, stress, and depression. [Complaint, ¶¶ 16-18]. Plaintiff was subsequently approved for STD benefits retroactively beginning November 8, 2004. [Complaint, ¶ 21].

The previous month, plaintiff "became increasingly concerned" that his supervisor was discriminating against female employees. [Complaint, ¶ 16]. Plaintiff reported the supervisor's conduct to UPS's human resources department in November 2004. [Complaint, ¶ 19].

4

In December 2004, plaintiff's son was killed in an automobile accident, worsening plaintiff's depression. [Complaint, ¶ 22]. Although the complaint is unclear on this point, the court infers that plaintiff continually remained on STD status from November 8, 2004, until he was transitioned to LTD benefits in early May 2005. [Complaint, ¶ 28].

On three occasions between March and November 2005, plaintiff's physician informed Broadspire that plaintiff "was released to return to work without restrictions, but would require continued anti-depressant medication." [Complaint, ¶¶ 23-24, 29, 34]. In response, UPS and Broadspire "told the Plaintiff that Federal Aviation Administration (FAA) regulations prohibited Plaintiff from returning to his former position of ramp supervisor due to his required use of anti-depressant medication." [Complaint, ¶ 25]. Plaintiff then contacted the FAA and was told that no such regulations exist. [Complaint, ¶ 30]. Although he "informed Defendants that he had contacted the FAA[,]" plaintiff was not allowed to return to work. [Complaint, ¶ 31].

By letter dated November 11, 2005, UPS terminated plaintiff's employment due to the length of his absence from work. [Complaint, ¶ 35]. Then, by notice dated December 20, 2005, Broadspire told plaintiff that he was no longer eligible for LTD benefits due to his physician's most recent opinion that he could return to his position subject to continued use of antidepressants. [Complaint, ¶ 37]. "There was no change in Plaintiff's status regarding the use of anti-depressant medication from [the physician's] earlier recommendation of March 17, 2005, that Plaintiff be able to return to work without

restrictions as compared to [the] November 28, 2005, recommendation which would justify the sudden change in Defendant UPS and Defendant Broadspire's position on Plaintiff's ability to return to work as a ramp supervisor." [Complaint, ¶ 38].

The complaint alleges that Broadspire committed tortious interference with a business relationship and violated both the Tennessee Human Rights Act, TENN. CODE ANN. § 4-21-101 *et seq.* ("THRA") and the Tennessee Handicap Act, TENN. CODE ANN. § 8-50-103 ("THA").[1] Because resolution of the present preemption motion hinges *on the pleadings*, the court will quote in full plaintiff's claims pertaining to Broadspire, with the court's emphasis added.

> 40. This cause of action is filed against Defendant UPS as an employer, and against its agent, Defendant Broadspire, for aiding, abetting, inciting, compelling, and/or commanding illegal acts in violation of the Tennessee Handicap Act (THA) and Tennessee Human Rights Act (THRA).
>
> 41. Based on the foregoing facts, Defendant UPS has violated the THA by perceiving Plaintiff as disabled and unable to perform his job as a ramp supervisor due to Plaintiff's depression and prescribed anti-depressant medication.
>
> . . .
>
> 45. Defendant Broadspire, the designated agent and administrator of Defendant UPS's disability benefits program, *determined that Plaintiff was unable to perform the material and substantial duties of his regular occupation* and refused to return Plaintiff to work for Defendant UPS due to Plaintiff's depression and prescribed anti-depressant medication until November 28, 2005, which was after Plaintiff's termination of employment.

---

[1] The complaint also sets forth a negligence claim against Broadspire. Plaintiff now concedes that his negligence claim is preempted by ERISA.

. . .

47. Defendant Broadspire, the designated agent and administrator of Defendant UPS's self-insured disability benefits program, violated the THA and THRA by aiding, abetting, inciting, compelling and/or commanding Defendant UPS in violating the THA.

48. As a direct and proximate cause [of] Defendant Broadspire's violation of the THA and THRA, Plaintiff suffered damages as set forth more fully herein.

. . .

61. This cause of action is being pled against Defendant Broadspire for tortiously interfering with Plaintiff's business relationship with Defendant UPS.

. . .

63. Defendant Broadspire, the administrator of Defendant UPS's disability benefits program, was aware that Plaintiff was an employee of Defendant UPS.

. . .

65. Defendant Broadspire, the administrator of Defendant UPS's disability benefits program, *determined that Plaintiff was unable to perform the material and substantial duties of his regular occupation* and refused to return Plaintiff to work for Defendant UPS due to Plaintiff's depression and prescribed anti-depressant medication until November 28, 2005, which was after Plaintiff's termination of employment.

. . .

67. As the direct and proximate result of the Defendant Broadspire's actions, Plaintiff's employment was involuntarily terminated with Defendant UPS in violation of law, and Plaintiff has suffered damages as set forth more fully herein.

68. Upon information and belief, the Defendant Broadspire's actions as alleged herein were intentional, malicious, and/or reckless, with a conscious disregard to the Plaintiff's rights.

. . .

75. Upon information and belief, the wrongful acts and discrimination of Defendant Broadspire as alleged herein in violation of the Tennessee common law were intentional and/or were done with knowing and/or reckless disregard of the Plaintiff's rights and the law of Tennessee. Plaintiff is therefore entitled to and seeks an award of punitive damages in an amount according to proof under the Tennessee common law.

In addition to requesting awards of compensatory and punitive damages against both defendants, plaintiff asks the court to enjoin the defendants "from engaging in the illegal and unlawful polices and practices described herein[.]" [Complaint, ¶ 80B].

IV.

*Analysis*

Generally, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). "[V]irtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991). "[O]nly those . . . state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted." *Id.* That ERISA may not offer the precise remedy sought by a plaintiff does not limit the scope of ERISA preemption. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214-16 (2004); *Cromwell*, 944 F.2d at 1276.

8

*Cromwell* is much-cited for its summary statement that the key preemption issue is "whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell*, 944 F.2d at 1276. Blind application of *Cromwell* to the present case would lead to a holding of no preemption, because the present plaintiff obviously does not seek unpaid plan benefits. Instead, he essentially complains that he received *too many* benefits. This court's analysis cannot, however, end at *Cromwell*, because that case and its progeny did not involve - nor do they seemingly contemplate - the uncommon fact pattern now at issue.

Courts must look to the substance of the state law claim rather than to the labels employed by the litigants. *Davila*, 542 U.S. at 214; *PONI*, 399 F.3d at 703; *Cromwell*, 944 F.2d at 1276. A claim's mere implication of a benefit plan is not dispositive of the preemption issue. *See PONI*, 399 F.3d at 699. However, "[w]here resolution of the [state law] claim necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted." *Id.* at 703.

The *PONI* court further explained that ERISA preempts state law claims that would: "(1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Id.* at 698 (citation and quotations omitted). A state law claim having "no basis whatsoever *but for* the ERISA plan" would serve as an "alternative enforcement mechanism" under *PONI*. *See Briscoe v. Fine*, 444 F.3d 478, 499-500 (6th Cir.

9

2006) (emphasis in original) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Mahoning Nat'l Bank*, 112 F.3d 252, 256 (6th Cir. 1997)). The Sixth Circuit has subsequently suggested a fourth category of preempted claims - those seeking "remedies for misconduct growing out of the administration of" an ERISA plan. *See Briscoe*, 444 F.3d at 497 (citation omitted).

In the preceding section, the court purposely quoted plaintiff's pertinent allegations against Broadspire in full. As illustrated, the *only* factual allegation against Broadspire is that it "determined that Plaintiff was unable to perform the material and substantial duties of his regular occupation." That is precisely the determination that Broadspire is required to make under the Plan. [Doc. 17, ex. 1, p. 91, 97]. Plaintiff's claims are therefore preempted, because plaintiff "seek[s] damages for the ERISA-regulated actions of an ERISA fiduciary[.]" *Hutchison v. Fifth Third Bancorp*, 469 F.3d 583, 587 (6th Cir. 2006). The issue of "deciding whether to grant benefits" is "exclusively under the control of ERISA law[.]" *Id.* at 588.

The remaining allegations against Broadspire are merely boilerplate legal conclusions that the court need not credit. *See PONI*, 399 F.3d at 697. Plaintiff alleges that Broadspire aided, abetted, incited, compelled, and/or commanded illegal acts in violation of the THA and THRA [Complaint, ¶¶ 40, 47]. Plaintiff further alleges that Broadspire tortiously interfered with his business relationship in an intentional, malicious, and/or reckless manner, with a conscious disregard for his rights. [Complaint, ¶ 68]. Lastly, in his

10

prayer for punitive damages, plaintiff alleges that Broadspire acted intentionally, knowingly, and/or with reckless disregard for his rights and the laws of Tennessee. [Complaint, ¶ 75]. These statements, however, are no more than parroting of elements of the pertinent state law claims. *See* TENN. CODE ANN. § 4-21-301(2) ("It is a discriminatory practice for a person or for two (2) or more persons to [a]id, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory by this chapter[.]"); *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (Tort of intentional interference with business relationship requires improper motive or means.); *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) (Defendant's conduct must be intentional, fraudulent, malicious, or reckless for an award of punitive damages to be justified.)

In sum, the complaint does not allege that Broadspire did *anything* other than "determine[] that Plaintiff was unable to perform the material and substantial duties of his regular occupation" - the very role of Broadspire under the Plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987) ("The common law causes of action raised in Dedeaux's complaint, each based on *alleged improper processing of a claim for benefits under an employee benefit plan*, undoubtedly meet the criteria for pre-emption[.]") (emphasis added). Like the plan participants in *Davila*, the present plaintiff "do[es] not attempt to remedy any violation of a legal duty independent of ERISA." *Davila*, 542 U.S. at 214. "Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990).

11

As noted, the court must focus on the type of relief that plaintiff seeks, and that remedy's relation to the Plan. *See Briscoe*, 444 F.3d at 497. The instant complaint, as to Broadspire, asks only that a jury review an administrator's decision regarding the award of benefits. Plaintiff's "state law claims are [thus] at the very heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan. Clearly, appellants' claims are preempted by ERISA." *Cromwell*, 944 F.2d at 1276.[2] Again, that ERISA may not offer the precise remedy sought by plaintiff does not limit the scope of preemption. *Davila*, 542 U.S. at 214-16; *Cromwell*, 944 F.2d at 1276.

By way of contrast, a complainant could allege (for example) that his employer, desiring to mask an unlawful termination, engaged its plan administrator in a sham disability determination to create a seemingly legitimate reason to fire the worker. Such a case - depending on the facts presented - <u>could perhaps</u> be a circumstance where the state law claims were merely tenuous, remote or peripheral to a benefits plan and thus not preempted by ERISA. However, that is not the situation presented by plaintiff to this court. Reading the present complaint, the court would have to mound inference upon inference upon inference to reach such an assumption. *See PONI*, 399 F.3d at 697 (no unwarranted factual inferences). Again, plaintiff - who is of course the "master of his complaint" -

---

[2] "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

alleges nothing more (boilerplate legal conclusions aside) than that Broadspire performed the exact role required by the Plan. Plaintiff cannot use state tort and civil rights labels to disguise "an end run around ERISA's exclusive enforcement mechanism." *See id.* at 703.

In sum, there is no cause of action against Broadspire in this case if there is no Plan. *See Ingersoll-Rand*, 498 U.S. at 140. Plaintiff's sought-after jury review of Broadspire's disability determination would serve as an "alternate enforcement mechanism." *See Briscoe*, 444 F.3d at 499-500. In the alternative, even if the court were to infer an ill motive from Broadspire's disability determination, plaintiff's state law claims would still be preempted, as they seek "remedies for misconduct growing out of the administration of" an ERISA plan. *See id.* at 497.

Plaintiff's claims against Broadspire must be dismissed. An order reflecting this opinion will be entered.

ENTER:

                                                    s/ Leon Jordan
                                               United States District Judge